## UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

CHARLEA HAWKINS,
              Appellant,

v.

DEPARTMENT OF THE ARMY,
           Agency.

DOCKET NUMBER
SF-1221-25-1259-W-1

DATE:  July 27, 2026

# THIS ORDER IS NONPRECEDENTIAL[1]

James Solomon, Esquire, Tampa, Florida, for the appellant.

Walter J, Folger, Esquire, Fort Shafter, Hawaii, for the agency.

Beatrice Morgan, Joint Base Elmendorf-Richardson, Alaska,
    for the agency.

### BEFORE

Henry J. Kerner, Vice Chairman
James J. Woodruff II, Member

### REMAND ORDER

The appellant has filed a petition for review of the initial decision, which dismissed her individual right of action (IRA) appeal for lack of jurisdiction after finding that she did not nonfrivolously allege that her protected activities were a contributing factor in a personnel action.  For the reasons discussed below, we

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  *See* 5 C.F.R. § 1201.117(c).

GRANT the appellant's petition for review, REVERSE the initial decision, and REMAND the case to the regional office for further adjudication in accordance with this Remand Order.

## BACKGROUND

The appellant is a GS-13 Supervisory Sexual Assault Response Coordinator (SARC) at the agency's Joint Base Elmendorf-Richardson (JBER), in Anchorage, Alaska. Initial Appeal File (IAF), Tab 1 at 1. In this position, she supervises the agency's Sexual Harassment/Assault Response and Prevention (SHARP) program for the 11th Airborne Division. *Id.* at 8, 16.

On May 10, 2024, the appellant's supervisor at the time, Chief of Staff J.R., issued the appellant a letter of concern and expectation. *Id.* at 16, 29-30. In the letter, he expressed concern over the appellant's leadership of the 11th Division's SHARP program and criticized her interactions with other staff members as "often rude and disrespectful." *Id.* at 29. The letter explained that J.R. would "follow up about these concerns" and that he was "considering further action if this behavior continues." *Id.* at 30. On November 14, 2024, M.M., who took over at some point as the appellant's supervisor, suspended her SHARP duties pending an investigation into complaints made by the appellant's subordinates that the appellant created a hostile work environment. *Id.* at 14-16, 31-32.

On January 28, 2025, the appellant filed a complaint with the Office of Special Counsel (OSC), alleging that the agency issued the letter of concern and expectation and suspended her SHARP duties in retaliation for various protected activities and disclosures. *Id.* at 9-28. The appellant alleged as protected disclosures and activities that she made complaints during a visit with the agency's Office of the Inspector General (OIG), initiated an equal employment opportunity (EEO) complaint, made a number of disclosures to both J.R. and M.M. about what she described as the intentional mismanagement of the SHARP program, and assisted in the OIG complaint of a colleague, J.W., by giving a statement. *Id.* at 14,

25-26. On March 17, 2025, OSC issued a letter, in which it notified the appellant that it had terminated the investigation of her whistleblower complaint and informed her that she had a right to file an appeal with the Board. *Id.* at 33.

The appellant timely filed the instant appeal. *Id.* at 3. She realleged that the letter of concern and the suspension of her SHARP duties were both retaliatory for her various protected disclosures and activities. *Id.* at 2. The administrative judge issued a jurisdictional order, notifying the parties of the appellant's jurisdictional burden and the relevant legal standards. IAF, Tab 3 at 1-11. The administrative judge ordered the appellant to submit evidence and argument on the jurisdictional issue. *Id.* at 11-12. In response, the appellant resubmitted the evidence that she included with her initial appeal, but she submitted no further argument. IAF, Tab 7. The agency submitted a response, in which it argued that the appellant did not nonfrivolously allege that she made protected disclosures and, alternatively, that she did not nonfrivolously allege that they were a contributing factor in a personnel action. IAF, Tab 9 at 9-14.

The administrative judge issued an initial decision, which dismissed the appeal for lack of jurisdiction. IAF, Tab 10, Initial Decision (ID) at 1, 23. He found that the appellant exhausted claims that she made protected disclosures and engaged in protected activity by making a complaint during an OIG visit, giving a statement that was used in J.W.'s OSC and OIG complaints, making an EEO complaint, and disclosing alleged intentional mismanagement of the SHARP program. ID at 7. He found that she also exhausted the alleged personnel actions of the letter of concern and expectation and the suspension of her SHARP duties. *Id.* He found that the appellant nonfrivolously alleged that her complaints during an OIG visit and her EEO activity were protected activities, but did not do the same regarding her allegation that she provided a statement that J.W. used in her OSC and OIG complaints. ID at 10-12. Additionally, he found that the appellant did not establish jurisdiction over her alleged protected disclosures of mismanagement on the part of her supervisors. ID at 13-16. Finally, he found that the appellant did not

nonfrivolously allege that either the EEO complaint or her complaints to OIG were a contributing factor in the letter of concern or the suspension of her SHARP duties. ID at 19-23.

The appellant has filed a petition for review. Petition for Review (PFR) File, Tab 1. The agency has responded to the petition for review. PFR File, Tab 3.

## DISCUSSION OF ARGUMENTS ON REVIEW

The Board has jurisdiction over an IRA appeal if the appellant has exhausted her administrative remedies before OSC and makes nonfrivolous allegations that (1) she made a protected disclosure described under 5 U.S.C. § 2302(b)(8) or engaged in protected activity described under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D), and (2) the disclosure or protected activity was a contributing factor in the agency's decision to take or fail to take a personnel action as defined under 5 U.S.C. § 2302(a).[2] *Salerno v. Department of the Interior*, 123 M.S.P.R. 230, ¶ 5 (2016).

The appellant has demonstrated by preponderant evidence that she exhausted some, but not all, of her claims before OSC.

*The administrative judge properly determined that the appellant exhausted her OIG and EEO activity and disclosures of intentional mismanagement of the SHARP program.*

The administrative judge found that the appellant exhausted with OSC that she complained to the agency's OIG during a November 7, 2023 visit, gave statements that were used in J.W.'s OSC and OIG complaints, filed an undated EEO

---

[2] On review, the appellant generally alleges agency wrongdoing that is not tied to an alleged protected disclosure or activity. For example, she reasserts that J.R. abused his authority by replacing the appellant with J.R.'s deputy as S.G.'s rating official so that S.G. would receive a more favorable rating. PFR File, Tab 1 at 8; IAF, Tab 1 at 25. The Board's IRA jurisdiction is limited to claims of reprisal for whistleblowing disclosures or activity identified in 5 U.S.C. §§ 2302(b)(8) and 2302(b)(9)(A)(i), (B), (C), or (D). *Miller v. Federal Deposit Insurance Corporation*, 122 M.S.P.R. 3, ¶ 2 (2014), *aff'd per curiam*, 626 F. App'x 261 (Fed. Cir. 2015). The appellant's allegations of wrongdoing that are not connected to any such matters are not within the scope of our IRA jurisdiction, and we do not consider them further.

complaint, and made disclosures about the allegedly intentional mismanagement of the SHARP program. ID at 7. The alleged disclosures of mismanagement that the administrative judge implicitly found that the appellant exhausted included disclosures that hiring for the SHARP program was delayed, that the appellant's subordinate S.G. failed to approve a travel voucher for over 60 days, and that J.R. improperly instructed the appellant to facilitate a tasker that would have made her responsible for training and appointing Investigative Officers for sexual harassment investigations. ID at 7, 13-16; IAF, Tab 1 at 21-23, 25. The administrative judge also found that she exhausted the May 10, 2024 letter of concern and expectation and the suspension of her SHARP duties beginning on November 14, 2024. ID at 7. The parties do not dispute these findings on review, and we discern no basis to disturb them.

> *The appellant has not proven that she exhausted the alleged disclosures and personnel actions that she raises for the first time on review.*

The appellant raises a number of disclosures for the first time on review that she has not proven she exhausted. The Board's jurisdiction over an IRA appeal is limited to those issues that have been previously raised with OSC. 5 U.S.C. § 1214(a)(3); *Chambers v. Department of Homeland Security*, 2022 MSPB 8, ¶ 10 (citations and internal quotations omitted). An appellant must prove exhaustion by preponderant evidence. *Cooper v. Department of Veterans Affairs*, 2023 MSPB 24, ¶ 5; 5 C.F.R. § 1201.57(c)(1). An appellant may demonstrate exhaustion through her initial OSC complaint, correspondence with OSC, or through other sufficiently reliable evidence, such as an affidavit or declaration attesting that the appellant raised with OSC the substance of the facts in the MSPB appeal. *Chambers*, 2022 MSPB 8, ¶ 11. The substantive requirements of exhaustion are met when an appellant has provided OSC with a sufficient basis to pursue an investigation such that OSC can take corrective action before involving the Board in the appeal. *Cooper*, 2023 MSPB 24, ¶ 5.

Below, the appellant submitted her OSC complaint, including a narrative of her claims that she provided with her OSC complaint, and a letter from OSC explaining her right to appeal to the Board. IAF, Tab 1 at 9-28, 33. The letter from OSC described the appellant's disclosures only in general terms as alleged mismanagement of the SHARP program. *Id.* at 33. Although the administrative judge advised the appellant of her burden to prove exhaustion and ordered her to submit evidence on that issue, the appellant did not submit a statement concerning exhaustion or any further documentation of her communications with OSC below. IAF, Tab 3 at 2, 11-12. Therefore, the administrative judge addressed disclosures and activity that the appellant described in her OSC complaint and her accompanying narrative. As addressed below, the disclosures that the appellant raises for the first time on review are not reflected in those documents.[3]

The appellant alleges on review that she made a disclosure that her subordinate K.M.G. behaved in a hostile and unprofessional manner on several instances, such as physically and deliberately bumping into the appellant and screaming at her during a team meeting. PFR File, Tab 1 at 6-7. While the appellant described the alleged incident with K.M.G. in her submissions to OSC, the appellant did not advise OSC that she had disclosed the incident to anyone in

---

[3] Although the Board typically will not consider arguments submitted for the first time on review unless it is new or material, we have considered the disclosures that the appellant raises for the first time on review to the extent that her allegations may provide a basis for finding that jurisdiction exists over the appeal. *DeGrella v. Department of the Air Force,* 2022 MSPB 44, ¶ 16 n.5 (considering new arguments relevant to jurisdiction on review because the issue of the Board's jurisdiction may be raised at any time during Board proceedings). Additionally, on review the appellant has submitted a number of documents that are not in the record below. PFR File, Tab 1 at 20-30, 33-159. While the Board typically will not consider evidence submitted for the first time on review, we have considered the appellant's new documentary evidence on review to the extent that it informs the question of the Board's jurisdiction over this appeal. *See Pirkkala v. Department of Justice*, 123 M.S.P.R. 288, ¶ 5 (2016) (considering new evidence relevant to jurisdiction on review because the issue of the Board's jurisdiction may be raised at any time during Board proceedings); *Meier v. Department of the Interior*, 3 M.S.P.R. 247, 256 (1980) (explaining that evidence submitted on review that was included in the record below and considered by the administrative judge is not new).

the agency. IAF, Tab 1 at 24. Instead, she provided it as an example of her poor relationship with her subordinates. *Id.*

The appellant identified to OSC that the SHARP program was generally understaffed and that J.R. delayed instituting a planned "restructure/realignment" of the program by approximately 6 months. *Id.* at 21-23. The appellant alleges for the first time on review that she disclosed these deficiencies. PFR File, Tab 1 at 6. We find that she failed to prove that she exhausted them. Absent from her submissions below is evidence that she advised OSC that she made a disclosure of this information.

Similarly, the appellant alleges on review that she disclosed to M.M. and J.R. that S.G. demonstrated a lack of subject matter knowledge, which compromised the SHARP program's credibility with the agency's Criminal Investigative Division; that it would be irresponsible to allow S.G. to attend a training conference because it would mean that no supervisory SARCs would remain in Alaska to manage the SHARP program during the conference; and that S.G. "improperly directed a [SARC] to breach confidentiality." PFR File, Tab 1 at 10. However, the appellant has not provided any evidence that she advised OSC that she disclosed this information. Absent knowledge of these alleged disclosures, OSC could not have investigated them. Therefore, we conclude that the appellant failed to prove exhaustion.

An appellant may give a more detailed account of her whistleblowing activities before the Board than she did to OSC. *Chambers*, 2022 MSPB 8, ¶ 10 (citing *Briley v. National Archives and Records Administration*, 236 F.3d 1373, 1378 (Fed. Cir. 2001)). We have considered whether the foregoing matters, some of which the appellant identified as problems with the SHARP program in her OSC complaint and accompanying narrative, might be considered part of her exhausted disclosure of intentional mismanagement of the SHARP program. However, we are not persuaded that OSC would have been prompted to investigate these specific issues as disclosures absent some indication by the appellant that she provided this

information to the agency. Nor has the appellant asserted on review that she raised these disclosures with OSC, and she has not provided any additional correspondence with OSC.

The appellant also alleges for the first time on review that the agency failed to provide her with midpoint performance counseling in May 2024 and subsequently lowered her performance evaluation. PFR File, Tab 1 at 10-11, 18. The appellant has not proven that she exhausted these two personnel actions with OSC. The documentation that the appellant provided regarding her communications with OSC below does not include any allegation about midpoint performance counseling. As to the appellant's performance evaluation, she mentioned on her OSC complaint form, "We are also challenging a performance evaluation through the EEO process, but will amend [the OSC complaint] to include the performance evaluation if the local EEO office believes [that] they do not have jurisdiction . . . ." IAF, Tab 1 at 13. There is no evidence to suggest that the appellant ever amended her OSC complaint to include a challenge to the performance evaluation. Therefore, we find that the appellant has not exhausted either the absence of midpoint counseling or her performance evaluation.

<u>The appellant nonfrivolously alleged that she engaged in the protected activity of filing an EEO complaint and of making complaints to the agency's OIG, but not of assisting in her colleague J.W.'s OSC and OIG complaints.</u>

We next consider whether the appellant has nonfrivolously alleged that she engaged in protected activity. A nonfrivolous allegation requires "sufficient factual matter, accepted as true, to state a claim that is plausible on its face." *Hessami v. Merit Systems Protection Board*, 979 F.3d 1362, 1364, 1369 (Fed. Cir. 2020); *see* 5 C.F.R. § 1201.4(s) (defining a nonfrivolous allegation as an assertion that is plausible on its face and that, if proven, could establish the matter at issue). Pursuant to 5 U.S.C. § 2302(b)(9)(C), it is a prohibited personnel practice to take a personnel action against an employee in reprisal for "cooperating with or

disclosing information to the Inspector General (or any other component responsible for internal investigation or review) of an agency, or the Special Counsel, in accordance with applicable provisions of law." *Holman v. Department of the Army*, 2025 MSPB 2, ¶ 12.

> *The appellant nonfrivolously alleged that her EEO and OIG complaints were protected activity under 5 U.S.C. § 2302(b)(9)(C).*

The administrative judge found that the appellant nonfrivolously alleged that she engaged in protected activity by making statements to the agency's OIG on November 7, 2023. ID at 10, 12. The administrative judge also found that the appellant engaged in protected activity by pursuing an EEO claim between June 2024 and March 2025. ID at 12. The parties do not dispute these findings on review, and we discern no reason to disturb them.

> *The appellant has not nonfrivolously alleged that her statement of support for J.W.'s OSC and OIG complaints was protected activity.*

On review, the appellant reargues that in February 2024 she engaged in protected activity by providing a statement that her coworker, J.W., submitted in connection with J.W.'s OSC and/or OIG complaints. PFR File, Tab 1 at 15-16; IAF, Tab 1 at 13, 26. The administrative judge found that the appellant did not nonfrivolously allege that she engaged in protected activity pursuant to 5 U.S.C. § 2302(b)(9)(B) or (C) by providing this statement.[4] ID at 11-12. We agree with the administrative judge.

The administrative judge reasoned that the appellant's statement of support did not constitute protected activity under 5 U.S.C. § 2302(b)(9)(C) because she did not disclose the information to OSC or the OIG herself. *Id.* Instead, the administrative judge found, the appellant alleged that she gave a statement to J.W., who then communicated with OSC and OIG. *Id.* Accordingly, the administrative

---

[4] The parties do not dispute the administrative judge's determination that the appellant failed to nonfrivolously allege that her statement contained any protected disclosure because she did not describe its contents. ID at 11-12. The appellant has not submitted a copy of the alleged statement.

judge found that the appellant did not nonfrivolously allege that she engaged in activity protected under 5 U.S.C. § 2302(b)(9)(C).  ID at 12.  We agree.

We also agree with the administrative judge's finding that, assuming as true the appellant's assertion that she gave a statement in support of J.W.'s OIG and OSC complaints, her allegations would not qualify as protected activity under 5 U.S.C. § 2302(b)(9)(B).  Pursuant to 5 U.S.C. § 2302(b)(9)(B), it is a protected activity to testify for or otherwise lawfully assist another individual in the exercise of any appeal, complaint, or grievance right.  To qualify for purposes of 5 U.S.C. § 2302(b)(9)(B), the appeal, complaint, or grievance must constitute initial steps toward taking legal action against an employer for the perceived violation of an employee's rights.  *Edwards v. Department of Labor*, 2022 MSPB 9, ¶ 27, *aff'd*, No. 2022-1967, 2023 WL 4398002 (Fed. Cir. July 7, 2023).  The appellant has not claimed that her colleague's OIG complaint was an initial step toward taking legal action against the agency for perceived violations of employment rights.

The administrative judge also properly determined that the appellant did not nonfrivolously allege that she assisted in J.W.'s OSC complaint within the meaning of 5 U.S.C. § 2302(b)(9)(B).  ID at 11.  He found that although filing an OSC complaint could be the first step toward taking legal action against the agency for perceived violations of employment rights, the appellant did not allege sufficient facts about the nature of her assistance.  *Id.*  We agree.  For example, although the appellant says that she gave J.W. a statement of support that was used in J.W.'s OSC complaint, she does not specify the contents of the statement or allege whether the statement was an affidavit that she intended for J.W. to submit to OSC or a personal note of encouragement that J.W. felt would be helpful to pass on to OSC.  PFR File, Tab 1 at 14-15; IAF, Tab 1 at 26.  Because the appellant has not alleged sufficient facts to determine the nature of the statement of support, we

agree with the administrative judge that she did not nonfrivolously allege that she engaged in protected activity by assisting in J.W.'s OSC complaint.[5]

**The appellant did not nonfrivolously allege that she made protected disclosures regarding the agency's mismanagement of the SHARP program.**

A nonfrivolous allegation of a protected whistleblowing disclosure is an allegation of facts that, if proven, would show that the appellant disclosed a matter that a reasonable person in her position would believe evidenced one of the categories of wrongdoing in 5 U.S.C. § 2302(b)(8). *Gabel v. Department of Veterans Affairs*, 2023 MSPB 4, ¶ 6. The test to determine whether a putative whistleblower has a reasonable belief in the disclosures is an objective one: whether a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the employee could reasonably conclude that the actions of the agency evidenced a violation of law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety. 5 U.S.C. § 2302(b)(8); *Gabel*, 2023 MSPB 4, ¶ 6. Vague, conclusory, unsupported, and pro forma allegations of wrongdoing do not meet the nonfrivolous pleading standard needed to establish the Board's jurisdiction over an IRA appeal. *El v. Department of Commerce*, 123 M.S.P.R. 76, ¶ 6 (2015), *aff'd per curiam*, 663 F.App'x 921 (Fed. Cir. 2016).

The administrative judge found that the appellant did not nonfrivolously allege that she disclosed the type of wrongdoing as contemplated by 5 U.S.C. § 2302(b)(8). ID at 14-15. In reaching this finding, the administrative judge concluded that the appellant's alleged disclosure of "purposeful mismanagement" was conclusory and therefore did not meet the nonfrivolous allegation standard. ID

---

[5] In the alternative, the administrative judge also found that even if the appellant did nonfrivolously allege that her assistance in J.W.'s OSC complaint was protected activity under 5 U.S.C. § 2302(b)(9)(B), she did not allege that such activity was the contributing factor in an exhausted personnel action. ID at 20-21. We also agree with the administrative judge's alternative finding.

at 13-14; IAF, Tab 1 at 26. The parties do not challenge this finding on review, and we decline to revisit it.

The appellant does, however, reraise on review her alleged disclosures that J.R. improperly attempted to assign her a tasker, that a subordinate delayed a travel voucher, and that hiring for the SHARP program was delayed. PFR File, Tab 1 at 10, 13, 15. The administrative judge concluded that the appellant did not meet the nonfrivolous pleading standard as to these alleged disclosures. ID at 14-16. We consider each of these alleged disclosures in turn.

> *The appellant did not nonfrivolously allege that she made a protected disclosure that she was improperly put in charge of an Investigating Officer tasker.*

The appellant reargues that she disclosed to J.R. that he was improperly placing her in charge of an Investigating Officer tasker despite guidance that she was not the proper individual to lead it. PFR File, Tab 1 at 15; IAF, Tab 1 at 21-22. The agency ultimately reassigned the tasker. IAF, Tab 1 at 22. The administrative judge found that the appellant's allegations on this point were conclusory because her disclosures did not clearly implicate an identifiable law, rule, or regulation that the agency violated when it improperly assigned her the tasker. ID at 15.

We agree with the administrative judge's conclusion that the appellant failed to nonfrivolously allege that she made a protected disclosure. However, we modify his reasoning to apply the correct standard. The appellant was not required to "clearly implicate" an identifiable law, rule, or regulation as the administrative judge suggested. ID at 15; *see Mason v. Department of Homeland Security*, 116 M.S.P.R. 135, ¶ 17 (2011). Rather, she was only required to nonfrivolously allege that she reasonably believed that her disclosure evidenced a violation of one of the circumstances described in 5 U.S.C. § 2302(b)(8). *Mason*, 116 M.S.P.R. 135, ¶17.

The standard for establishing jurisdiction is a nonfrivolous allegation of facts that, if proven, would show that the appellant made a protected disclosure,

i.e., that the matter disclosed was one which a reasonable person in her position would believe evidenced one of the situations specified in 5 U.S.C. § 2302(b)(8). *Mudd v. Department of Veterans Affairs*, 120 M.S.P.R. 365, ¶ 8. A "violation of any law, rule, or regulation" is one of those situations. *Id.*, ¶ 8. Any doubt or ambiguity as to whether an appellant raised a nonfrivolous allegation of a reasonable belief should be resolved in favor of a finding that jurisdiction exists. *Id.* The Board takes into account when, as here, an appellant appears to lack any special expertise in legal matters or other experience interpreting agency regulations. *Id.* Nonetheless, we agree with the administrative judge's determination that the appellant's allegations are conclusory and therefore she did not meet her burden.

The appellant has not explained why she reasonably believed that a rule existed prohibiting the assignment of the tasker to her. She stated below she "receiv[ed] guidance" along these lines, but she does not indicate who provided that guidance. PFR File, Tab 1 at 15; IAF, Tab 1 at 21. Further, the substance of the rule she states is not an actual prohibition on the assignment of the tasker to her. Instead, she indicated she "should not have been responsible for the tasker," and the "tasker was to be facilitated by the command." PFR File, Tab 1 at 15; IAF, Tab 1 at 21-22. The appellant does not explain the distinction she is making between the SHARP program and "command," or allege that command could not delegate the tasker to her.

Because the appellant has not explained the source of the alleged rule or the basis for her interpreting the rule as prohibiting the assignment of the tasker, we conclude that she has failed to nonfrivolously allege that her belief in such a rule was reasonable. Because we agree with the administrative judge on this basis, we do not reach his alternative rationale that the appellant failed to meet her jurisdictional burden because she failed to allege that the tasker was actually assigned to her or that such an assignment was real and imminent. ID at 15-16.

*The appellant did not nonfrivolously allege that she made a protected disclosure regarding delayed hiring into the SHARP program.*

The appellant alleged below that she notified J.R. that due to the "extreme delay" in the hiring process, individuals who were interviewed and selected to fill vacancies were considering positions at other agencies. IAF, Tab 1 at 23. The administrative judge found that the appellant's allegations regarding this disclosure were not nonfrivolous because they were conclusory. ID at 14-15. We agree.

Here, the appellant alleged that she had numerous discussions with J.R. and others at command regarding the lengthy hiring process, but her descriptions of those disclosures could not reasonably be read to implicate any of the categories of wrongdoing identified in 5 U.S.C. § 2302(b)(8). For example, she alleged to OSC that "there has been an extreme delay in . . . hiring actions, despite having direct hiring authority" and that "[t]his has significantly hurt the progression of the SHARP [p]rogram restructure/realignment." IAF, Tab 1 at 23. She alleged that she brought this concern to J.R. but he offered no assistance. *Id.*

On review, the appellant provides additional details concerning this alleged disclosure that emphasize her belief that it reflected poor management practices related to hiring. However, she does not identify any error in the administrative judge's analysis. Gross mismanagement means a management action or inaction that creates a substantial risk of adverse impact upon the agency's ability to accomplish its mission. *Cassidy v. Department of Justice*, 118 M.S.P.R. 74, ¶ 8 (2012). It requires more than de minimis wrongdoing or negligence. *Id.* In her petition for review, the appellant states that she raised her "continued . . . frustrations with the hiring process." PFR File, Tab 1 at 13. She provides an example of an individual whose hiring was delayed because that individual "received the run around . . . concerning background checks." *Id.* The appellant also notes that she disagreed with the agency's decision not to reassign an enlisted individual to the position of SHARP program representative. *Id.* at 13-14. Beyond conclusory statements that the hiring delays hurt the progression of the program's

restructuring, she has not alleged any risk of adverse impact on the agency's ability to accomplish its mission. IAF, Tab 1 at 23. Accordingly, she has not met the nonfrivolous pleading standard.

Nor does the appellant's documentary evidence submitted on review support a conclusion that she disclosed a category of wrongdoing described in 5 U.S.C. § 2302(b)(8). PFR File, Tab 1 at 136-140. These emails support her assertion that hiring actions were delayed, but not that she disclosed any form of wrongdoing recognized by 5 U.S.C. § 2302(b)(8). *Id.* Accordingly, we find that the appellant did not make a disclosure of wrongdoing when she raised concerns about the hiring delays in the SHARP program.

> *The appellant did not nonfrivolously allege that she made a protected disclosure regarding a subordinate's improper handling of a travel voucher.*

The appellant also realleges that on February 22, 2024, she disclosed to J.R. that S.G. failed to certify the appellant's travel voucher for 2 months, causing the appellant's account to enter "critical status." PFR File, Tab 1 at 9-10; IAF, Tab 1 at 25. The administrative judge found that the appellant did not nonfrivolously allege that the delay in approving the travel voucher implicated any category of wrongdoing found in 5 U.S.C. § 2302(b)(8). ID at 14-15. We agree with the administrative judge.

The Board has previously found that an alleged disclosure that the agency violated its own regulations by failing to timely process a travel voucher can form the basis of a nonfrivolous allegation of a disclosure of a violation of a law, rule, or regulation. *El*, 123 M.S.P.R. 76, ¶ 9. However, here the appellant did not nonfrivolously allege that she reasonably believed that she disclosed a violation of a law, rule, or regulation. Instead, she alleged that her subordinate's inaction was a "dereliction of duty" that put the account in "critical status." IAF, Tab 1 at 25. Accordingly, the appellant's pleadings do not support a finding that she nonfrivolously alleged a violation of a law, rule, or regulation.

Similarly, the appellant has not alleged facts that would support a finding that she made a disclosure of gross mismanagement, gross waste of funds, abuse of authority, or a substantial and specific danger to public health and safety. Therefore, the appellant has not nonfrivolously alleged that the Board has jurisdiction over this disclosure.

The appellant has nonfrivolously alleged that her protected activity was a contributing factor in a personnel action.

We now consider whether the appellant has nonfrivolously alleged that her protected activity was a contributing factor in a personnel action. *See Chambers*, 2022 MSPB 8, ¶ 14. The administrative judge found that the appellant did not meet this burden. ID at 19-23. To satisfy the contributing factor criterion at the jurisdictional stage, an appellant need only raise a nonfrivolous allegation that the fact of, or content of, the protected disclosure or activity was one factor that tended to affect the personnel action in any way. *Chambers*, 2022 MSPB 8, ¶ 14.

One way to establish this criterion is the knowledge/timing test, under which an employee may nonfrivolously allege that the activity was a contributing factor in a personnel action through circumstantial evidence, such as evidence that the official taking the personnel action knew of the activity, and that the personnel action occurred within a period of time such that a reasonable person could conclude that the activity was a contributing factor in the personnel action. *Id.* However, the knowledge/timing test is not the only way for an appellant to establish the contributing factor criterion. *Dorney v. Department of the Army*, 117 M.S.P.R. 480, ¶ 14 (2012). If an administrative judge determines that the appellant has failed to satisfy the knowledge/timing test, he should consider other evidence, such as (1) evidence pertaining to the strength or weakness of the agency's reasons for taking the personnel action; (2) whether the whistleblowing was personally directed at the proposing or deciding officials; and (3) whether these individuals had a desire or motive to retaliate against the appellant. *Id.*, ¶ 15.

*The appellant has nonfrivolously alleged that her OIG complaint was a contributing factor in a personnel action.*

The administrative judge found that the appellant did not nonfrivolously allege that her OIG complaint was a contributing factor in the letter of expectation and in being relieved of her SHARP duties under either the knowledge/timing test or by applying the *Dorney* factors.[6] ID at 19-23. We disagree.

The administrative judge found that, although the appellant met the timing portion of the knowledge/timing test, she did not make nonfrivolous allegations that either J.R. or M.M. were aware of her OIG activity. ID at 20-21. The appellant's complaints to OIG were made on or around November 7, 2023. IAF, Tab 1 at 13. J.R. issued the letter of concern in May 2024, and M.M. temporarily stripped the appellant of her SHARP duties in November 2024. *Id.* at 29-32. Personnel actions that occur within 2 years of the protected activity satisfy the timing portion of the knowledge/timing test. *Abernathy v. Department of the Army*, 2022 MSPB 37, ¶ 15. Because both personnel actions occurred within this 2-year time frame, we agree with the administrative judge that the timing portion of the knowledge/timing test is satisfied.

We disagree with the administrative judge's finding that the appellant did not satisfy the knowledge portion of the knowledge/timing test. ID at 20-21. In her OSC complaint, the appellant stated that "[c]ommand would have been informed of [the appellant's] statements to [O]IG sometime shortly after November 7, 2023." IAF, Tab 1 at 13. On review, the appellant does not support this statement or offer an explanation as to how M.M. or J.R. knew about her statements to OIG. She also did not provide this information below.

However, allegations of knowledge that are based partially on conjecture, at least at the jurisdictional stage, can amount to a nonfrivolous allegation. *Holman*,

---

[6] The administrative judge concluded that the appellant nonfrivolously alleged that the letter of expectation and being relieved of her SHARP duties were personnel actions. ID at 17-19. The parties do not dispute these findings on review, and we discern no basis to disturb them. PFR File, Tab 1 at 17-19; IAF, Tab 1 at 15-16, 29-32.

2025 MSPB 2, ¶ 15. While the appellant's assertion that M.M. and/or J.R. knew about her OIG activity was at least partially based on conjecture, we find at this jurisdictional stage that it amounts to a nonfrivolous allegation that officials in her supervisory chain were aware of her statements to OIG shortly after they were made in November 2023. We recognize that the agency submitted unsigned statements from J.R. and M.M. denying such knowledge. IAF, Tab 9 at 55-56. However, while this evidence may be relevant to the merits of the appellant's claim, it cannot serve as a basis to defeat the appellant's nonfrivolous allegation of contributing factor. *See Hessami*, 979 F.3d at 1367-68 (clarifying that whether allegations are nonfrivolous depends on whether they are facially sufficient, which should be determined without weighing the evidence). Because we find that the appellant has satisfied the knowledge prong of the knowledge/timing test, she has nonfrivolously alleged that her statements to OIG were a contributing factor in her two exhausted personnel actions.

The administrative judge found that the appellant did not nonfrivolously allege that her EEO communications were a contributing factor in a personnel action. ID at 21-23. The appellant does not reraise this claim on review. We discern no reason to disturb the administrative judge's reasoning.

Because the Board has jurisdiction over this IRA appeal, the appellant is entitled to her requested hearing on the merits. IAF, Tab 1 at 1; *Holman*, 2025 MSPB 2, ¶ 6. The parties should also be provided with an opportunity to conduct discovery on remand. Although the administrative judge advised the parties below that they had 30 days to initiate the discovery process below, he issued the initial decision on the 30th day. IAF, Tab 4 at 2; ID at 1. Therefore, the period for engaging in discovery ended on the same day that the parties were likely to have begun the process, and we find it appropriate that they be allowed to engage in the process on remand.

**ORDER**

For the reasons discussed above, we remand this case to the regional office for further adjudication in accordance with this Remand Order.

*Gina K. Grippando*

FOR THE BOARD:                    _____
                                 Gina K. Grippando
                                 Clerk of the Board
Washington, D.C.